# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### JUNE TERM, 1906.

———

SEVEN MILE BEACH COMPANY, appellant,

*v.*

CHARLES S. DOLLEY et al., respondents.

[Argued June 29th, 1906. Decided March 4th, 1907.]

Defendants agreed with complainants to conduct a summer school at a certain place for a period of three years, and to erect and pay for, within three years, such buildings as might be required, and complainants agreed that, on performance by defendants, complainants would execute a deed for certain land located at the place where the school was to be conducted. The concluding clause of the contract recited that it was the intention of the agreement that defendants should conduct a *bona fide* summer school, and, in return, receive the land. Defendants conducted a school, but erected no buildings, the school being carried on in buildings belonging to other parties.—*Held* that, on a bill by complainants to declare the agreement void by reason of failure of performance on the part of defendants, complainants were entitled to a decree.

735

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bergen, who filed the following opinion:

This contract is very badly drawn, and it requires the reading of the whole contract to enable you to apprehend what the parties intended by it. As I interpret the contract, there appears to be two branches to it. Along the lines of one a conveyance was to be made to certain individuals, provided they would buy and conduct a summer school at this place called Avalon. Connected with that, however, was apparently a vague theory that it was to be stationary, and an association was to be organized, and to that association another tract of land was to be conveyed, provided they erected buildings and continued to use it for the purposes of a summer school. "The said ground to only be used for the purposes of the summer school of said association."

I do not interpret this contract as meaning that it is an absolute requirement that the individual defendants shall erect any building. Now, the stipulation is, they are to erect and pay for, within three years from the date of this agreement, such buildings, &c., as the association may require for its purposes; and the further stipulation in this contract is that there shall be an association incorporated, but it limits the effect of this stipulation by the words, "but no definite amount of building is specified." Practically that destroys the agreement to build, because if there is no definite amount of building specified, the parties of the second part may build a building that would cost only a nominal amount, and they would say and insist then that they had complied with this clause of this contract.

However, at the close of this agreement, we find the words, summing it all up, that it is the intention of this agreement that the said parties of the second part shall conduct a summer school, *bona fide,* in accordance with the prospectus, a map of which is hereto attached, marked *Exhibit B,* for a period of three years, and should in return receive from the Seven Mile Beach Company the land hereinbefore mentioned, in the manner herein described.

My conclusion, therefore, is that so far as the individual defendants here are concerned, they are entitled to have the land

conveyed to them. On the other hand, the association is not entitled to specific performance, because they have practically abandoned the enterprise. If the association had maintained its incorporation up to this date, and by that act had indicated that they had any intention of carrying out the contract which was to take this land and put on it buildings, lecture halls, &c., and continue the work of a summer school, the situation would be different. But as I look at it now, there is no one to convey the property to. The corporation is absolutely defunct. It has been declared to have no existence in law. There is no one to whom the property can be conveyed. And coupled with the fact, as it appears here, that they have substantially abandoned any intention of carrying out the stipulation to conduct this summer school, or to use this land only for the purposes of a summer school, I do not consider that they are in a position to ask specific performance. I cannot accept the argument that because they have done all this they can now come in and say, "Well, we are sorry we neglected to take advantage of our opportunities; we will organize another corporation, and thereby get into position so that we can go on and have this property conveyed to us." That cannot be done.

I will advise a decree of specific performance as to the one block of lots, but as to the other, there shall be no specific performance. I will not allow costs to either party.

Of course, you will understand that where there is a contract like this decreed to be specifically performed, the parties stand in this relation—that the vendor holds the title in trust for the vendee, and he is only entitled or only had a vendor's lien for the purchase price. Substantially the land belongs to the party to whom it should have been conveyed. I am very strongly of the opinion that you took the property just as it was in 1896, upon the theory that the court has determined that the Seven Mile Beach Company held the title in trust for you, and all that they were entitled to was the vendor's lien for the purchase price, whatever that may have been. Now, of course, they have not any lien, because the purchase price has been satisfied. If it was money, then they would have a lien for their money, and you would have had to pay the taxes if the property had been

conveyed. I think the defendants are bound to pay the taxes on the property from the time they were entitled to a conveyance, on the theory that it is held in trust for them, as a trustee, keeps down interest and taxes and like charges. A trustee does it for his own sake. If he collects any rents he is entitled to, he can apply the rent to the payment of such indebtedness, and he is entitled to his money, with interest on it.

*Mr. Clarence L. Cole* (with *Mr. Lewis Starr* on the brief), for the appellants.

*Mr. Norman Grey,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The appeal in this case is from a decree, made upon a cross-bill filed by the defendants, which requires the complainant to specifically perform an agreement, in writing and under seal, for the conveyance of a tract of land at Avalon, on Seven Mile Beach, Cape May county, New Jersey. The purpose of the original bill filed by the complainant was to have this agreement declared to vest in the defendants no right or interest in the lands described therein, and to be absolutely null and void, by reason of failure of performance on their part. The decree appealed from, in addition to the affirmative relief granted on the defendants' cross-bill, denied the relief sought by the complainant in its original bill. The complainant appeals both from the portion of the decree which refuses it relief and also from that part thereof which grants relief upon the defendants' cross-bill.

The agreement which is the basis of this litigation was made on the 6th day of May, 1903. By its terms the defendants, who were connected with various educational institutions in the city of Philadelphia, agreed, among other things, to incorporate a society under the name of the American Association for the Advancement of Education ; to conduct a summer school of the association at Avalon, New Jersey, and nowhere else, for a

period of three years from and after the date of the agreement; to conduct the school at least four weeks of every summer during the three years, and to erect and pay for, within the three years, "such buildings, lecture halls," &c., as the association might require for its purposes, no definite amount of building being specified. The complainant agreed that if the "foregoing covenants" of the defendants should be well and faithfully performed, it would, at the expiration of the three years, execute and deliver a good and sufficient deed to them for twenty specified lots, located in the borough of Avalon. The concluding clause of the agreement is in the following words:

"It being the intention of this agreement that the said parties of the second part [*i. e.*, the defendants] shall conduct a summer school *bona fide*, in accordance with the prospectus, a copy of which is hereunto attached, for a period of three years, and should in return receive from the Seven Mile Beach Company the land hereinbefore mentioned in the manner herein described."

It appears from the proofs that in the summer of 1903 the defendants, having obtained from the borough of Avalon permission to use the public schoolhouse of the borough, and from the complainant permission to use an old sawmill located upon the lands in dispute, opened a school in these buildings, and conducted it there during the summer season; and that during the following summer they also conducted their school in those buildings. The proofs show that no rent was required from them for the use thereof. During the summer of 1905 the defendants conducted their school in a cottage, which they rented for the purpose, and also in the old sawmill. It is conceded that neither during the duration of the contract, nor at any subsequent time, did they erect any building in Avalon in compliance with the terms of their contract; and further, that after the summer of 1905 the carrying on of the school was permanently abandoned.

The construction put upon the agreement by the learned vice-chancellor was that the sole obligation which it imposed upon the defendants as a condition to their right to a conveyance of the land in dispute was to conduct a summer school at Avalon, *bona fide,* during the period specified in it. His conclusion that

this was the true construction of the instrument was rested upon the words of its last clause, which he considered to be a summary of its binding provisions. It seems to us, notwithstanding the declaration of intention contained in the clause referred to, that the construction put upon the agreement by the learned vice-chancellor is too narrow. It is apparent, from a reading of it as a whole, that the purpose sought to be accomplished by the complainant was the establishment of a permanent summer school at Avalon, which would form one of the attractions of the place as a seaside resort. The natural effect of the conduct of the school for three years would be to carry the scheme beyond the experimental stage. The erection during that period, by the defendants, at their own expense, of such buildings as should be required for the purpose of the school, would constitute a permanent investment by them, and tend to insure their continuing the conduct of the school after the expiration of the three-year period. Their promise to make this investment was just as binding upon them, and was as much a part of the consideration for the complainant's promise to convey, as was their agreement to locate the school at Avalon and conduct it there for three years. In reaching this conclusion we do not overlook the suggestion contained in the opinion of the learned vice-chancellor that the words, "but no definite amount of building is specified," in the covenant of the defendants to build, practically destroys that covenant, for the reason that it would be satisfied by the erection of a building of nominal cost. The suggestion, however, seems to us to be without force. The agreement is to erect such buildings as the association should require for its purposes. Both parties to it saw that the number, size and character of the buildings which would be required by the association would depend largely upon the degree of success which should attend the contemplated scheme. They, therefore, did not attempt to anticipate the future by providing for the erection of a fixed number of buildings of specified size, which might, on the one hand, turn out to be greatly in excess of the needs of the association, and, on the other hand, entirely insufficient for its purposes, but agreed generally that whatever buildings the association should require for its purposes should be

erected by the defendants, leaving their number, size and character for the future to determine.

The portion of the decree appealed from by the complainant should be reversed and a decree entered in conformity to the prayer of the complainant's bill.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—14.